# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF OHIO
### WESTERN DIVISION

KAREN S. PETERS,
    Plaintiff,

    vs.

COMMISSIONER OF
SOCIAL SECURITY,
    Defendant.

Case No. 1:20-cv-604

McFarland, J.
Litkovitz, M.J.

**REPORT AND
RECOMMENDATION**

Plaintiff Karen S. Peters brings this action pursuant to 42 U.S.C. §§ 405(g) and 1383(c)(3) for judicial review of the final decision of the Commissioner of Social Security (Commissioner) denying plaintiff's application for disability insurance benefits (DIB) prior to July 17, 2018.  This matter is before the Court on plaintiff's statement of errors (Doc. 11), the Commissioner's response in opposition (Doc. 16), and plaintiff's reply memorandum (Doc. 17).

## I. Procedural Background

Plaintiff filed her application for DIB in August 2016, alleging disability since September 17, 2015, due to degenerative disc disease, lumbar stenosis with radiculopathy, bilateral carpal tunnel surgery, right rotator cuff repair, major depressive disorder, anxiety, post-traumatic stress disorder (PTSD), and attention deficit disorder (ADD).  The application was denied initially and upon reconsideration.  Plaintiff, through counsel, requested and was granted a *de novo* hearing before administrative law judge (ALJ) Renita K. Bivins.  Plaintiff appeared and testified at the ALJ hearing on February 14, 2019.  Plaintiff and a vocational expert (VE) appeared and testified at a second ALJ hearing on June 6, 2019.  On July 3, 2019, the ALJ issued a decision finding

plaintiff was disabled as of July 17, 2018 but not prior to this date.  This decision became the final decision of the Commissioner when the Appeals Council denied review on June 9, 2020.

## II.  Analysis

### A.  Legal Framework for Disability Determinations

To qualify for disability benefits, a claimant must suffer from a medically determinable physical or mental impairment that can be expected to result in death or that has lasted or can be expected to last for a continuous period of not less than 12 months.  42 U.S.C. § 423(d)(1)(A). The impairment must render the claimant unable to engage in the work previously performed or in any other substantial gainful employment that exists in the national economy.  42 U.S.C. §§ 423(d)(2), 1382c(a)(3)(B).

Regulations promulgated by the Commissioner establish a five-step sequential evaluation process for disability determinations:

1) If the claimant is doing substantial gainful activity, the claimant is not disabled.

2) If the claimant does not have a severe medically determinable physical or mental impairment – *i.e.*, an impairment that significantly limits his or her physical or mental ability to do basic work activities – the claimant is not disabled.

3) If the claimant has a severe impairment(s) that meets or equals one of the listings in Appendix 1 to Subpart P of the regulations and meets the duration requirement, the claimant is disabled.

4) If the claimant's impairment does not prevent him or her from doing his or her past relevant work, the claimant is not disabled.

5) If the claimant can make an adjustment to other work, the claimant is not disabled.  If the claimant cannot make an adjustment to other work, the claimant is disabled.

*Rabbers v. Comm'r of Soc. Sec.,* 582 F.3d 647, 652 (6th Cir. 2009) (citing 20 C.F.R. §§ 404.1520(a)(4)(i)-(v), 404.1520(b)-(g)). The claimant has the burden of proof at the first four steps of the sequential evaluation process. *Id.*; *Wilson v. Comm'r of Soc. Sec.,* 378 F.3d 541, 548 (6th Cir. 2004). Once the claimant establishes a prima facie case by showing an inability to perform the relevant previous employment, the burden shifts to the Commissioner to show that the claimant can perform other substantial gainful employment and that such employment exists in the national economy. *Rabbers*, 582 F.3d at 652; *Harmon v. Apfel*, 168 F.3d 289, 291 (6th Cir. 1999).

**B.    The Administrative Law Judge's Findings**

The ALJ applied the sequential evaluation process and made the following findings of fact and conclusions of law:

> 1. The [plaintiff] meets the insured status requirements of the Social Security Act through December 31, 2021.
>
> 2. The [plaintiff] has not engaged in substantial gainful activity since the alleged onset date (20 CFR 404.1571 *et seq.*).
>
> 3. Since the alleged onset date of disability, September 17, 2015, the [plaintiff] has had the following severe impairments: lumbar degenerative disc disease with stenosis and radiculopathy; status post carpal tunnel release; status post right rotator cuff repair; a major depressive disorder; a post-traumatic stress disorder; and an attention deficit-hyperactivity disorder (20 CFR 404.1520(c)).
>
> 4. Since September 17, 2015, the [plaintiff] has not had an impairment or combination of impairments that meets or medically equals the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 CFR 404.1520(d), 404.1525 and 404.1526).
>
> 5. After careful consideration of the entire record, the [ALJ] finds that prior to July 17, 2018, the date the [plaintiff] became disabled, the [plaintiff] had the residual functional capacity to perform light work as defined in 20 CFR

404.1567(b).  Specifically, the [plaintiff] was able to lift and carry up to twenty pounds occasionally and ten pounds frequently.  She was able to stand and/or walk for six hours per eight-hour day and sit for six hours per eight-hour day with normal breaks.  The [plaintiff] could have frequently climbed ramps and stairs, but never climb ladders ropes scaffolds.  She could have frequently stooped, kneeled, crouched, and occasionally crawled.  The [plaintiff] was limited to frequent handling of objects as gross manipulation bilaterally.  She was limited to occasional reaching overhead with the bilateral upper extremities.  The [plaintiff] needed to avoid all exposure to unprotected heights.  Further, she was able to understand, remember and carry out simple instructions with no fast pace production quotas.  The [plaintiff] could have maintained sufficient attention and concentration and sustained persistence and pace to complete simple tasks that were not fast-paced.  She was able to relate adequately with occasional interaction with the public, co-workers and supervisors on a superficial basis meaning that the job did not require conflict resolution, persuading others or prolonged, intense social interaction.  The [plaintiff] could not have tolerated over the shoulder supervision.  Finally, the [plaintiff] could have adapted to routines changes in a static work setting where any major changes were explained.

6.  After careful consideration of the entire record, the undersigned finds that beginning on July 17, 2018, the [plaintiff] has the residual functional capacity to perform sedentary work as defined in 20 CFR 404.1567(a).  Specifically, the [plaintiff] is able to lift and carry up to ten pounds occasionally and ten pounds frequently.  She is able to stand and/or walk for thirty minutes at a time and four hours per eight-hour day.  She could sit for thirty minutes at a time and six hours per eight-hour day with normal breaks.  The [plaintiff] could frequently climb ramps and stairs but never climb ladders, ropes, and scaffolds.  She could frequently stoop, kneel, crouch, and occasionally crawl.  The [plaintiff] could perform frequent handling of objects as gross manipulation bilaterally.  She could occasionally reach overhead with the bilateral upper extremities.  The [plaintiff] must avoid all exposure to unprotected heights.  Further, she is able to understand, remember and carry out simple instructions with no fast pace production quota.  The [plaintiff] could maintain sufficient attention and concentration and sustain persistence and pace to complete simple tasks that are not fast-paced.  She is able to relate adequately with occasional interaction with the public, co-workers and supervisors on a superficial basis meaning that the job does not require conflict resolution, persuading others or prolonged, intense social interaction.  She could not tolerate over the shoulder supervision.  Finally, the [plaintiff] could adapt to routines changes in a static work setting where any major changes are explained.

4

7. Since September 17, 2015, the [plaintiff] was unable to perform any past relevant work (20 CFR 404.1565).[1]

8. Prior to the established disability onset date, the [plaintiff] was a younger individual age 18-49.  Since the established disability onset date, the [plaintiff]'s age category has changed to an individual closely approaching advanced age (20 CFR 404.1563).

9. The [plaintiff] has at least a high school education and is able to communicate in English (20 CFR 404.1564).

10. Prior to July 17, 2018, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports a finding that the [plaintiff] is "not disabled" whether or not the [plaintiff] has transferable job skills.  Beginning on July 17, 2018, the [plaintiff] has not been able to transfer job skills to other occupations (See SSR 82-41 and 20 CFR Part 404, Subpart P, Appendix 2).

11. Prior to July 17, 2018, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the [plaintiff] could have performed (20 CFR 404.1569 and 404.1569a).[2]

12. Beginning on July 17, 2018, considering the [plaintiff]'s age, education, work experience, and residual functional capacity, there are no jobs that exist in significant numbers in the national economy that the [plaintiff] can perform (20 CFR 404.1560(c) and 404.1566).

13. The [plaintiff] was not disabled prior to July 17, 2018, but became disabled on that date and has continued to be disabled through the date of this decision.  Her disability is expected to last twelve months past the onset date (20 CFR 404.1520(g)).

14. The [plaintiff]'s substance use disorder is not a contributing factor material to the determination of disability (20 CFR 404.1535).

(Tr. 18-34).

---

[1]Plaintiff's past relevant work was as an ironworker, a skilled, heavy exertion job.  (Tr. 32-33, 66).
[2]The ALJ relied on the VE's testimony to find that plaintiff would have been able to perform the requirements of approximately 555,100 unskilled, light jobs in the national economy, such as weights checker clerk (45,000 jobs), protective clothing issuer (68,000 jobs), and bus monitor (23,000 jobs).  (Tr. 33-34, 67).

### C.    Judicial Standard of Review

Judicial review of the Commissioner's determination is limited in scope by 42 U.S.C. § 405(g) and involves a twofold inquiry: (1) whether the findings of the ALJ are supported by substantial evidence, and (2) whether the ALJ applied the correct legal standards. *See Blakley v. Comm'r of Soc. Sec.*, 581 F.3d 399, 406 (6th Cir. 2009); *see also Bowen v. Comm'r of Soc. Sec.*, 478 F.3d 742, 745-46 (6th Cir. 2007).

The Commissioner's findings must stand if they are supported by "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citing *Consolidated Edison Co. v. N.L.R.B.*, 305 U.S. 197, 229 (1938). Substantial evidence consists of "more than a scintilla of evidence but less than a preponderance. . . ." *Rogers v. Comm'r of Soc. Sec.*, 486 F.3d 234, 241 (6th Cir. 2007). In deciding whether the Commissioner's findings are supported by substantial evidence, the Court considers the record as a whole. *Hephner v. Mathews*, 574 F.2d 359 (6th Cir. 1978).

The Court must also determine whether the ALJ applied the correct legal standards in the disability determination. Even if substantial evidence supports the ALJ's conclusion that the plaintiff is not disabled, "a decision of the Commissioner will not be upheld where the SSA fails to follow its own regulations and where that error prejudices a claimant on the merits or deprives the claimant of a substantial right." *Rabbers*, 582 F.3d at 651 (quoting *Bowen*, 478 F.3d at 746); *see also Wilson*, 378 F.3d at 545-46 (reversal required even though ALJ's decision was otherwise supported by substantial evidence where ALJ failed to give good reasons for not giving weight to treating physician's opinion, thereby violating the agency's own regulations).

D.      **Relevant Medical Evidence and Opinions**

1.  *Shanthi Rajaratnam, M.D. - primary care physician*

Dr. Rajaratnam served as plaintiff's primary care physician for more than ten years.  (Tr. 462).  Between September 17, 2015, plaintiff's alleged onset date, and July 17, 2018, the date the ALJ determined plaintiff became disabled, plaintiff saw Dr. Rajaratnam nine times.  (Tr. 479-565).

On September 28, 2015, plaintiff presented with chronic right shoulder pain, fatigue, insomnia, hair loss, and a high stress level.  (Tr. 590).  On physical examination, she appeared well-developed and well-nourished.  (Tr. 591).  Dr Rajaratnam prescribed trazadone and instructed her to follow up with orthopedics later that day.  (*Id.*).

On January 8, 2016, plaintiff indicated that she was chopping wood in advance of a planned shoulder surgery and injured her left thumb.  (Tr. 564).  The physical examination revealed a well-developed and well-nourished forty-nine-year-old woman with a non-infected injury splitting the skin at the ventral thumb.  (*Id.*).  Dr. Rajaratnam prescribed Percocet, elevation, and ice, and instructed plaintiff to report to the emergency room, if necessary, because the thumb was too swollen to splint.  (Tr. 565).

On October 25, 2016, plaintiff informed Dr. Rajaratnam that she had been moving a mattress and felt immediate severe pain and protrusion near the sight of her 2013 midline hernia repair surgery.  (Tr. 553).  Physical examination revealed a small hernia at the upper abdomen, and Dr. Rajaratnam referred plaintiff to Dr. Jergens for surgical evaluation.  (Tr. 553-54).

On November 15, 2016, plaintiff presented with abdominal pain, vomiting, and bowel concerns.  (Tr. 543).  Upon physical examination, plaintiff's abdomen exhibited no mass, and there was no rebound or guarding.  (*Id.*).  Plaintiff's abdomen was tender diffusely, and her guaiac stool test was negative.  (*Id.*).  Dr. Rajaratnam diagnosed abdominal pain secondary to hernia and prescribed Prilosec and one refill of Percocet prior to plaintiff's scheduled hernia repair surgery.  (*Id.*).

On April 20, 2017, plaintiff presented following a second surgery on her right shoulder. (Tr. 531).  She indicated that she continued to have pain, that her surgeon indicated the joint was encapsulated, and that she had reaggravated a prior tear of tendons in her left forefoot for which she was told surgery "was not an option."  (Tr. 532).  Plaintiff rated her shoulder pain as a three on a ten-point scale "most of the time" and reported left elbow pain, low back and hip pain which precluded prolonged standing, an inability to focus, and depression.  (*Id.*).  Plaintiff appeared well-developed and well-nourished on physical examination with right shoulder abduction limited to 120 degrees and difficulty with internal rotation and extension.  (*Id.*).  Dr. Rajaratnam assessed chronic pain at multiple sites and referred her to a pain management physician.  (*Id.*).

On August 17, 2017, plaintiff presented with bilateral elbow pain with tingling at fifth fingers and an ingrown toenail on her left second toe.  (Tr. 519).  Plaintiff reported that she injured the toe years earlier, and the nail grows back ingrown and with frequent infections.  (*Id.*) Physical examination revealed a reddened toe with a deeply clipped toenail.  (*Id.*)  Dr.

Rajaratnam referred plaintiff to a podiatrist for treatment of the affected nail and to a surgeon for ulnar nerve release.  (*Id.*).

On January 31, 2018, plaintiff presented for review of her chronic medical conditions and ADD.  (Tr. 508).  She reported that her right shoulder was somewhat better but she continued to have low back pain which Dr. Ross was treating with epidural steroid injections.  (*Id.*).  In addition, she reported that her anxiety was improved and she was being treated psychiatrically for her PTSD.  (*Id.*).  Physical examination revealed a well-developed, well-nourished fifty-one-year-old woman with normal breath sounds and vital signs.  (*Id.*).  Dr. Rajaratnam requested lab tests for hypercholesterolemia and started plaintiff on a trial of Adderall.  (*Id.*).

On May 23, 2018, plaintiff reported an inability to accomplish tasks if not on Adderall.  (Tr. 495).  She reported that she was living in a trailer in a friend's backyard and received a pension because she had been declared physically disabled but was still "fighting to get her pay."  (*Id.*).  She further reported that Dr. Moss had declared her mentally disabled due to PSTD and general anxiety disorder.  (*Id.*).  Dr. Rajaratnam noted that plaintiff seemed nervous and anxious.  (*Id.*).  She diagnosed ADD with unspecified hyperactivity presence and prescribed Adderall and continued counselling.  (Tr. 495-96).

On June 22, 2018, plaintiff presented with chronic pain in both shoulders and back, tingling and numbness in her right arm with pain at the trapezius, stiffness in her back and fingers, an inability to sit for more than twenty minutes or stand for more than thirty minutes, and inability to raise her arms above her shoulders.  (Tr. 488).  Physical examination revealed tenderness at the base of the neck and left spine, decreased range of neck motion and decreased

side flexion to the right, grinding at the right shoulder, and pain raising her arms above shoulder level, as well as full range of motion at the low back with pain.  (Tr. 488-89).  Dr. Rajaratnam noted her chronic neck, shoulder, and low back pain, and indicated she would complete "disability papers" for plaintiff.  (Tr. 489).

On July 17, 2018, Dr. Rajaratnam completed an Arthritis and Cervical Spine Medical Source Statement.  (Tr. 467).  Dr. Rajaratnam opined that plaintiff has chronic pain and paresthesia, tingling and numbness in her right arm, bilateral shoulder pain, and low back pain; she suffers from tenderness, muscle weakness, reduced grip strength and lack of coordination; and she "drops things."  (Tr. 462).  Dr. Rajaratnam further indicated that plaintiff has significant limitations with reaching, handling, and fingering and would be able to grasp, twist, and reach zero percent of an eight-hour working day.  (Tr. 463).  Dr. Rajaratnam stated that plaintiff was capable only of low stress work, would likely be off task twenty-five percent or more of each workday, and would likely miss more than four days of work per month.  (*Id.*).  Dr. Rajaratnam noted that plaintiff's depression and anxiety contributed to the severity of her physical limitations, and her impairments lasted or would be expected to last twelve months or more.  (Tr. 465).  Dr. Rajaratnam opined that plaintiff could not sit for more than twenty minutes at a time or stand more than thirty minutes at a time and would require shifting positions at will.  (*Id.*).  Finally, Dr. Rajaratnam indicated that plaintiff can occasionally lift ten pounds or less, rarely lift twenty pounds, and never lift fifty pounds; rarely look up, down or hold her head in a static position; occasionally bend but only rarely twist, crouch, or climb stairs; and never climb ladders.  (Tr. 466).

2. *Seth Vogelstein, D.O. - union disability evaluator*

In June 2016, Seth Vogelstein, D.O., examined plaintiff on behalf of plaintiff's application for a disability pension through her union. (Tr. 433-36). Plaintiff complained of neck, back, right shoulder, and left foot pain. (Tr. 433). On examination, Dr. Vogelstein found plaintiff had some tenderness and reduced range of motion; a non-antalgic gait, normal strength throughout, and normal sensation; and negative straight leg raising bilaterally. (Tr. 435). Dr. Vogelstein opined that the residuals from plaintiff's right shoulder injury and surgery, in conjunction with her cervical and lumbar pathology, "would now make it more probable than not, that she would no longer be able to perform the full unrestricted duties of an Iron Worker." He concluded that "total disability" is appropriate as far as her duties as an iron worker were concerned. (Tr. 436).

3. *William Ross, D.O. - pain management specialist*

Plaintiff began treating with a pain management specialist, William Ross, D.O., in September 2017, due to complaints of pain in her neck, shoulder, back and foot. (Tr. 738-42). Plaintiff reported her pain at a level seven out of ten on an analog pain scale. On examination, she exhibited a non-antalgic gait, mild restriction in her lumbar range of motion, normal motor strength in all four extremities, and intact sensation. (Tr. 738, 741). Dr. Ross ordered an MRI of plaintiff's lumbar spine, which revealed degenerative disc disease and facet arthropathy most severe at the L3-4 level. (Tr. 694-95). Dr. Ross diagnosed chronic lumbar radiculopathy and recommended epidural steroid injections. (Tr. 734-35). Following two injections, plaintiff reported her pain improved from a seven to a three out of ten. (Tr. 707). When seen in February

2018, Dr. Ross noted that plaintiff ambulated with a non-antalgic gait, and she maintained normal strength and sensation in her bilateral upper and lower extremities.  (Tr. 710).  She then underwent a third epidural block.  (Tr. 711).

### 4.  *Eugene Moss, M.D. - treating psychiatrist*

Plaintiff's treating psychiatrist, Dr. Moss, prepared an undated opinion on plaintiff's behalf.  (Tr. 451-58).  Dr. Moss indicated that plaintiff had been seeing him weekly since May 11, 2017.  (Tr. 452).  Dr. Moss reported that even after counseling and pharmacological management, plaintiff still had "high symptom distress of PTSD, depression and anxiety."  (*Id.*).

Specifically, Dr. Moss found that plaintiff had limited ability to understand, remember, and carry out very short and simple instructions, sustain an ordinary routine without special instruction, be aware of normal hazards and take appropriate precautions, and adhere to basic standards of neatness and cleanliness.  (Tr. 454-55).  Dr. Moss opined that plaintiff retained no useful ability to function or was unable to meet competitive standards in most other areas, including maintaining attention and regular attendance, working in coordination with or proximity to others, asking simple questions, accepting instructions and appropriate criticism from supervisors, and dealing with normal work stress.  (*Id.*).  As to her functional limitations, Dr. Moss opined that plaintiff would be seriously limited in her ability to understand, remember, and apply information, carry out detailed instructions, set realistic goals, deal with stress of semiskilled work, interact appropriately with others, and travel in unfamiliar places.  (Tr. 454-55).  Dr. Moss concluded that plaintiff would miss more than four days of work per month.  (Tr. 457).

5.  *State Agency Review*

In November 2016, after reviewing plaintiff's file, state agency physician Rannie Amiri, M.D., found that plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently, and stand, walk, or sit for about six hours in an eight-hour workday. (Tr. 132). Plaintiff could frequently climb ramps or stairs, stoop, kneel, and crouch but only occasionally crawl with no climbing of ladders, ropes, or scaffolding. (Tr. 133). Dr. Amiri limited plaintiff to occasional right overhead reaching in all directions but found plaintiff's handling and fingering to be unlimited. (*Id.*). Dr. Amiri concluded plaintiff should avoid all exposure to unprotected heights, machinery, or other hazards. (Tr. 134). Leslie Green, M.D., reviewed plaintiff's file upon reconsideration in March 2017 and affirmed Dr. Amiri's assessment. (Tr. 148-50).

**E.      Specific Errors**

On appeal, plaintiff alleges that the ALJ erred by not properly considering the evidence of record before July 17, 2018. Specifically, plaintiff contends: (1) the ALJ did not identify any medical records to show worsening medically by July 17, 2018, to limit plaintiff to only sedentary work as of that date but not before; (2) for the period prior to July 17, 2018, the ALJ erred as a matter of law in failing to weigh Dr. Rajaratnam's opinion; (3) the ALJ erred in not including the "nervous impairment" work-related limitations in her residual functional capacity (RFC) for the period prior to July 17, 2018; (4) the ALJ erred in her analysis of plaintiff's subjective complaints prior to July 17, 2018; and (5) the ALJ failed to meet the burden at step five of the five-step sequential evaluation with improper hypothetical questions for the vocational expert. (Docs. 11 and 17). In response, the Commissioner argues that the ALJ

correctly assessed the opinion evidence, plaintiff's subjective allegations, and her residual functional capacity when determining plaintiff could perform light exertional work with additional nonexertional limitations prior to July 17, 2018.  (Doc. 16).

### F.    Treating Physician Dr. Rajaratnam (First and Second Assignments of Error)

The ALJ gave significant weight to plaintiff's treating physician, Dr. Rajaratnam, as of July 17, 2018 – the date on which Dr. Rajaratnam completed a medical source statement – and determined that date to be the date plaintiff became disabled.  (Tr. 31).  In two closely related assignments of error, plaintiff contends:  (1) there is no evidence that plaintiff's medical condition, age, or RFC changed on July 17, 2018, the date of Dr. Rajaratnam's opinion, as to make her disabled on that date; and (2) the ALJ erred when she adopted the date of Dr. Rajaratnam's assessment as the disability onset date but failed to weigh Dr. Rajaratnam's assessment in determining whether plaintiff was disabled before July 17, 2018.  (Doc. 11 at PAGEID 1253).  The Commissioner responds that the ALJ appropriately found plaintiff's impairments severe as of September 2015, and the "ALJ's thorough discussion of the record illustrated that Dr. Rajaratnam's opinion was not supported" prior to July 2018.  (Doc. 16 at PAGEID 1284).

It is well-established that the findings and opinions of treating physicians are entitled to substantial weight.[3]  Under the treating physician rule, "greater deference is generally given to the opinions of treating physicians than to those of non-treating physicians. . . ."  *Rogers*, 486 F.3d at 242; *Wilson*, 378 F.3d at 544.  The rationale for the rule is that treating physicians are "the medical professionals most able to provide a detailed, longitudinal picture of [a claimant's] medical

---

[3]20 C.F.R. § 404.1527, which sets out the treating physician rule, has been amended for claims filed on or after March 27, 2017.  *See* 20 C.F.R. § 404.1520c.  This amendment does not apply to plaintiff's claim, which she filed in April 2016.  (*See* Tr. 321-22).

impairment(s) and may bring a unique perspective to the medical evidence that cannot be obtained from the objective medical findings alone." *Rogers*, 486 F.3d at 242.

A treating source's medical opinion must be given controlling weight if it is: (1) "well-supported by medically acceptable clinical and laboratory diagnostic techniques;" and (2) "not inconsistent with the other substantial evidence in [the] case record[.]" 20 C.F.R. § 404.1527(c)(2); *see also Gayheart v. Comm'r of Soc. Sec.*, 710 F.3d 365, 376 (6th Cir. 2013). If a treating source's medical opinion is not entitled to controlling weight, the ALJ must apply the following factors in determining what weight to give the opinion: the length of the treatment relationship and the frequency of examination; the nature and extent of the treatment relationship; supportability of the opinion; consistency of the opinion with the record as a whole; and the specialization of the treating source. *Wilson*, 378 F.3d at 544; *see also Blakley*, 581 F.3d at 408 (quoting Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *4) ("Treating source medical opinions [that are not accorded controlling weight] are still entitled to deference and must be weighed using all of the factors provided in" 20 C.F.R. § 404.1527(c)).

In addition, an ALJ must "give good reasons in [the] notice of determination or decision for the weight [given to the claimant's] treating source's medical opinion." 20 C.F.R. § 404.1527(c)(2). The ALJ's reasons must be "supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight." *Gayheart*, 710 F.3d at 376 (citing Soc. Sec. Rul. 96-2p, 1996 WL 374188, at *5). This requirement serves a two-fold purpose: (1) it helps a claimant to understand the disposition of h[er] case, especially "where a claimant knows that h[er]

15

physician has deemed h[er] disabled;" and (2) it "permits meaningful review of the ALJ's application of the [treating-source] rule." *Wilson*, 378 F.3d at 544.

July 17, 2018 is the date on which plaintiff's treating physician, Dr. Rajaratnam, completed the Arthritis and Cervical Spine Medical Source Statement. (Tr. 467). Dr. Rajaratnam opined that plaintiff had chronic pain, lack of coordination, inability to hold things, reduced grip strength, impaired sleep, muscle weakness, and tenderness. (Tr. 462). Dr. Rajaratnam stated that plaintiff has significant limitations reaching, handling, and fingering and can use her hands, fingers, and arms zero percent of an eight-hour workday. (Tr. 463). According to Dr. Rajaratnam, plaintiff would likely be "off task" twenty-five percent or more of a typical workday and would likely be absent from work more than four days per month. (*Id.*). In addition, Dr. Rajaratnam indicated that plaintiff could sit only twenty minutes at a time and stand only thirty minutes at once and would require shifting positions at will. (Tr. 465). Finally, according to Dr. Rajaratnam, plaintiff can lift ten pounds or less only occasionally; cannot look down, look up, or hold her head in a static position in a sustained manner; and can rarely twist, occasionally stoop, rarely squat, and never climb ladders. (Tr. 466).

The ALJ placed "significant weight" on Dr. Rajaratnam's July 17, 2018 medical source statement and concluded that plaintiff became disabled on July 17, 2018. The ALJ stated, "Although portions of [her] assessment appear a bit extreme, it is well supported and generally consistent with the other evidence of record after July of 2018." (Tr. 31). The ALJ, however, failed to assess Dr. Rajaratnam's opinion for any weight *prior to* July 17, 2018, despite Dr. Rajaratnam's extensive treatment of plaintiff prior to that date. The ALJ's failure in this regard is reversible error.

16

The governing regulations require that the ALJ consider all medical opinions in the record.  *See* 20 C.F.R. § 404.1527(b) ("[W]e will always consider the medical opinions in your case. . . ."); 20 C.F.R. § 404.1527(c) ("[W]e will evaluate every medical opinion we receive."). This includes a discussion of the weight assigned to such opinions.  *See Cox v. Comm'r of Soc. Sec.*, 615 F. App'x 254, 258 (6th Cir. 2015) (ALJ's failure to explain weight to treating and examining physicians prevented meaningful review of ALJ's decision).

Here, the ALJ assessed Dr. Rajaratnam's opinion and gave it significant weight for the period starting July 17, 2018 and beyond.  However, the ALJ gives no indication how or whether she considered Dr. Rajaratnam's opinion as it related to plaintiff's limitations and functioning for the period prior to July 17, 2018.  Nor is it apparent whether the ALJ found Dr. Rajaratnam's treatment notes prior to July 17, 2018 to be consistent or inconsistent with Dr. Rajaratnam's medical source statement.  For the relevant period, Dr. Rajaratnam treated plaintiff for chronic pain at multiple sites, an inability to stand for prolonged periods, and difficulty moving her right shoulder on April 20, 2017; bilateral elbow pain with finger tingling in both hands on August 17, 2017; back pain and review of her chronic medical conditions on January 31, 2018; ADD, nervousness, anxiety, and inability to accomplish tasks on May 23, 2018; and neck and back pain, shoulder grinding and pain, tingling and numbness in her right arm, and frequent need to change position on June 22, 2018.  (Tr. 481-534).  The ALJ's failure to explain the weight she afforded Dr. Rajaratnam's opinion prior to July 17, 2018 in light of this evidence precludes meaningful judicial review.  *See Cox*, 615 F. App'x at 258.

Moreover, the ALJ selected the date of Dr. Rajaratnam's medical source statement as the onset date of plaintiff's disability.  Common sense dictates that plaintiff's multiple impairments did not suddenly become disabling on the date Dr. Rajaratnam issued her opinion and not the week, month, or year before.  In fact, Dr. Rajaratnam's medical source statement suggests an earlier onset date of disability may be appropriate.  (*See* Tr. 456, opining that plaintiff's "impairments *lasted* or can . . . be expected to last at least twelve months") (emphasis added).  Without any explanation by the ALJ for the selection of this onset date and any assessment of the weight to Dr. Rajaratnam's opinion prior to July 17, 2018, the Court cannot meaningfully review the ALJ's decision.

Because the ALJ failed to either give Dr. Rajaratnam's opinion controlling weight or explain how, consistent with 20 C.F.R. § 404.1527, she evaluated Dr. Rajaratnam's opinion for the period prior to July 17, 2018, the Court is unable to engage in meaningful review of the ALJ's determination of plaintiff's capabilities prior to July 17, 2018.  *See Wilson*, 378 F.3d at 544; *Gayheart*, 710 F.3d at 376.  As such, the agency violated its own regulations and that error prejudiced plaintiff for the period prior to July 17, 2018.  *See Wilson*, 378 F.3d at 545-46.  Therefore, plaintiff's first and second assignments of error should be sustained.

### G.    "Nervous Impairments" and RFC Finding (Third Assignment of Error)

Plaintiff contends the ALJ erred when she failed to include plaintiff's limitations from her "nervous impairment" in the RFC finding for the period prior to July 17, 2018.  Specifically, plaintiff argues the ALJ erred by not giving the most or controlling weight to Dr. Moss,

plaintiff's treating psychiatrist, and by failing to give good reasons for rejecting Dr. Moss's opinion on plaintiff's disabling limitations. (Doc. 11 at PAGEID 1255, citing Tr. 29-30).

The ALJ gave "little weight" to Dr. Moss's opinion that plaintiff had marked and extreme limitations in her mental abilities to perform work activities. (Tr. 29, citing Tr. 452-459). The ALJ discounted Dr. Moss's opinion for several reasons and cited specific evidence in support of those reasons. The ALJ found that Dr. Moss's assessment was based on plaintiff's reported symptoms that she stated had existed her entire life, which was inconsistent with her work history. The ALJ also determined that Dr. Moss's opinion was inconsistent with the overall medical evidence, including Dr. DeLuca's November 2016 consultative examination; the mental status examination findings in the Modern Psychiatry and Wellness treatment records; Dr. Moss's own mental status examination findings; and the September 2017, November 2017, and February 2018 examination findings of William Ross, D.O. (Tr. 30).

Plaintiff does not take issue with the reasons posited by the ALJ, nor has she made any attempt to explain why the specific reasons given by the ALJ for affording little weight to Dr. Moss's opinion are not supported by substantial evidence. Instead, plaintiff cites to office treatment notes outlining her symptoms and mental status findings that purportedly support Dr. Moss's opinion and argues that Dr. Moss's assessment was entitled to the most weight. (Doc. 11 at PAGEID 1254, 1255). However, even where substantial evidence could support a different conclusion or where a reviewing court would have decided the matter differently, the ALJ's decision must be affirmed if it is supported by substantial evidence. *See Ulman v. Comm'r of Soc. Sec.*, 693 F.3d 709, 714 (6th Cir. 2012); *Her v. Commissioner*, 203 F.3d 388, 389 (6th Cir.

19

1999).  Though there is some medical evidence that could support Dr. Moss's opinion, plaintiff's statement of errors includes no explanation why the reasons actually articulated by the ALJ are not substantially supported.  Plaintiff has not carried her burden to show that the evidence cited by the ALJ in weighing Dr. Moss's opinion does not substantially support her finding. Plaintiff's third assignment of error should be overruled.

### H.    Plaintiff's Fifth Assignment of Error

In her fifth assignment of error, plaintiff alleges the ALJ committed several errors in evaluating plaintiff's vocational abilities at Step 5 of the sequential evaluation process.  Several of the errors cited by plaintiff actually concern alleged limitations the ALJ omitted from her pre-July 17, 2018 RFC finding.  According to plaintiff, the omission of these limitations from the hypothetical questions to the VE resulted in unreliable VE testimony on which the ALJ erroneously relied.

Plaintiff contends the ALJ posed an improper hypothetical question to the VE that failed to include "the days missed due to the weekly counseling sessions."  (Doc. 11 at PAGEID 1258). Plaintiff fails to explain how a ½ hour or 1 hour therapy session per week (*see generally* Tr. 786-937) translates into absences exceeding one day per month, the amount of absences from work that an employer will tolerate according to the VE.  *See Hollon ex rel. Hollon v. Comm'r of Soc. Sec*., 447 F.3d 477, 491 (6th Cir. 2006) ("Under these circumstances, we decline to formulate arguments on [plaintiff's] behalf, or to undertake an open-ended review of the entirety of the administrative record . . . [and] we limit our consideration to the particular points that [plaintiff] appears to raise in her brief on appeal.").  Plaintiff has not shown that her weekly therapy visit

would conflict with a routine work schedule, necessitating inclusion in the ALJ's RFC finding and hypothetical question to the VE.

Plaintiff also argues the ALJ failed to include a limitation on relating to others on a superficial basis as opined by the state agency's reviewing psychologist.  (Doc. 11 at PAGEID 1258, citing Tr. 151 ("Claimant is able to relate to a few familiar others on a superficial basis.")).  The ALJ's RFC included the limitation that plaintiff could only have "occasional interaction with the public, co-workers and supervisors on a *superficial basis* meaning that the job did not require conflict resolution, persuading others or prolonged, intense social interaction."  (Tr. 21) (emphasis added).  Plaintiff appears to argue that the ALJ should have included the state agency psychologist's proposed limitation verbatim.  Plaintiff has failed to explain how the ALJ's inclusion of "somewhat different limitations to better quantify the [plaintiff's] workplace restrictions and abilities" in the RFC (Tr. 29) was in error.  "Even where an ALJ provides 'great weight' to an opinion, there is no requirement that an ALJ adopt a state agency psychologist's opinions verbatim; nor is the ALJ required to adopt the state agency psychologist's limitations wholesale."  *Reeves v. Comm'r of Soc. Sec.*, 618 F. App'x 267, 275 (6th Cir. 2015).  The Court finds no error in this regard.

However, as discussed above, the ALJ failed to weigh Dr. Rajaratnam's opinion with respect to the period prior to July 17, 2018 and therefore did not include certain limitations in the RFC assessment for that time period.  Consequently, the hypothetical questions presented to the VE do not properly reflect plaintiff's impairments and/or limitations prior to July 17, 2018.  Accordingly, the ALJ erred by relying on this vocational testimony to carry her burden at Step 5

of the sequential evaluation process.  *See White v. Comm'r of Soc. Sec.,* 312 F. App'x 779, 789

(6th Cir. 2009) (ALJ erred in relying on answer to hypothetical question because it simply

restated RFC that did not accurately portray claimant's impairments).  Because the ALJ's

hypothetical questions failed to accurately portray plaintiff's impairments, the VE's testimony in

response to those hypotheticals does not constitute substantial evidence that plaintiff could

perform the work identified by the VE prior to July 17, 2018.  Therefore, plaintiff's assignment

of error should be sustained in this regard.

　　　　Finally, plaintiff argues that the weights checker clerk, protective clothing issuer, and bus

monitor jobs cited by the VE and relied on by the ALJ are unreliable and cannot be relied upon

at Step 5.  First, plaintiff contends the VE's testimony on the bus monitor job is inconsistent with

the DOT.  However, where the ALJ questions the VE, and the VE testifies that there is no

conflict with the DOT, the Sixth Circuit has repeatedly held that the ALJ is under no further

obligation to interrogate the VE, especially where the plaintiff is afforded a full opportunity to

cross-examine the VE.  *See Lindsley v. Comm'r of Soc. Sec.*, 560 F.3d 601, 606 (6th Cir. 2009).

*See also Lee v. Comm'r of Soc. Sec.*, 529 F. App'x 706, 715 (6th Cir. 2013); *Ledford v. Astrue*,

311 F. App'x 746, 757 (6th Cir. 2008).  The ALJ is only required to develop the record further

where the conflict between the DOT and the VE's testimony is apparent.  *See* SSR 00-4p, 2000

WL 1898704, at *4 ("If the VE's or VS's evidence appears to conflict with the DOT, the

adjudicator will obtain a reasonable explanation for the apparent conflict.").  Despite having an

opportunity to do so, plaintiff's counsel did not question the VE about any apparent

inconsistencies between his testimony and the DOT, nor did plaintiff's counsel bring any

potential conflicts to the ALJ's attention after the hearing. Counsel was afforded a full opportunity to cross-examine the vocational expert, and the ALJ had no affirmative duty under SSR 00-4p to conduct his own interrogation of the VE to determine the accuracy of the vocational testimony. *See Lindsley*, 560 F.3d at 606 ("Nothing in S.S.R. 00-4p places an affirmative duty on the ALJ to conduct an independent investigation into the testimony of witnesses to determine if they are correct.") (citing *Martin v. Comm'r of Soc. Sec.*, 170 F. App'x 369, 374 (6th Cir. 2006)); *see also Lee*, 529 F. App'x at 715 (the ALJ asked the VE if her testimony was consistent with the DOT, the VE answered that it was, and "[t]his effectively satisfied the Commissioner's burden" particularly because the plaintiff's "representative could have—but did not—cross-examine the VE concerning her representation"). Because the ALJ specifically asked the VE if his testimony was consistent with the DOT (*see* Tr. 75) and the uncontradicted testimony of the VE indicated that no conflict existed, the ALJ did not commit reversible error at Step Five of the sequential evaluation process.

Second, plaintiff contends the DOT job descriptions to which the VE testified are outdated and conflict with the more recent O*NET vocational information in terms of specific vocational preparation (SVP) levels. Plaintiff's argument is not well-taken.

The Sixth Circuit has recently clarified that the DOT, and not the O*NET, is the appropriate source for determining job availability in Social Security cases. *See O'Neal v. Comm'r of Soc. Sec*. 799 F. App'x 313, 317 (6th Cir. 2020) (noting that in 2010, the SSA "determined that O*NET in its current form was not suitable for disability claims adjudication" and that regulations clearly favor use of the DOT). The Sixth Circuit in *O'Neal* held that

23

"[b]ecause the DOT continues to be recognized as a source of reliable information and [the plaintiff] did not cross-examine the vocational expert when he had the opportunity, the vocational expert's testimony constitutes substantial evidence to support the ALJ's finding that [the plaintiff] was able to perform work that existed in significant numbers in the national economy." 799 F. App'x at 318.  As discussed above, plaintiff failed to cross-examine the vocation expert on any alleged SVP discrepancies, and the ALJ did not err in relying on the VE's testimony.  Accordingly, plaintiff's fifth assignment of error should be sustained in part and overruled in part.

## I.     Plaintiff's Fourth Assignment of Error

Plaintiff's fourth assignment of error asserts the ALJ erred in her analysis of plaintiff's subjective complaints prior to July 17, 2018.  As stated above, the undersigned orders that this matter be remanded because the ALJ failed to properly analyze the medical opinion of Dr. Rajaratnam for the period prior to July 17, 2018.  Because the ALJ's further evaluation of the evidence may have an impact on the analysis of plaintiff's subjective complaints, it is not necessary to address plaintiff's fourth assignment of error.  *See Palmore v. Comm'r of Soc. Sec.*, No. 1:20-cv-36, 2021 WL 1169099, at *9 (S.D. Ohio Mar. 29, 2021); *Born v. Berryhill*, No. 3:14-cv-01946, 2017 WL 2376921, at *9 (M.D. Tenn. June 1, 2017); *Trent v. Astrue*, No. 1:09-cv-2680, 2011 WL 841538, at *7 (N.D. Ohio Mar. 8, 2011).  In any event, even if plaintiff's argument had merit, the outcome would be the same, i.e., a remand for further proceedings and not an outright reversal for benefits.

**III. This matter should be reversed and remanded for further proceedings.**

In determining whether this matter should be reversed outright for an award of benefits or remanded for further proceedings, the undersigned notes that all essential factual issues have not been resolved in this matter. *Faucher v. Sec'y of H.H.S.*, 17 F.3d 171, 176 (6th Cir. 1994). This matter should be reversed and remanded for further proceedings with instructions to the ALJ to properly analyze Dr. Rajaratnam's medical opinion for the period prior to July 17, 2018 according to 20 C.F.R. § 404.1527; to reassess plaintiff's RFC, giving appropriate weight to the opinion of Dr. Rajaratnam, including an explanation on the record for the weight afforded to her opinion prior to July 17, 2018; to reassess plaintiff's subjective complaints; and for further medical and vocational evidence as warranted.

<b>IT IS THEREFORE RECOMMENDED THAT:</b>

The decision of the Commissioner be **REVERSED** and **REMANDED** for further proceedings consistent with this opinion.

Date: _____10/29/2021_____

Karen L. Litkovitz
Chief United States Magistrate Judge

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF OHIO**
**WESTERN DIVISION**

KAREN S. PETERS,                                    Case No. 1:20-cv-604
        Plaintiff,                                          McFarland, J.
                                                            Litkovitz, M.J.
        vs.


COMMISSIONER OF
SOCIAL SECURITY,
        Defendant.


**NOTICE TO THE PARTIES REGARDING THE FILING OF OBJECTIONS TO R&R**

Pursuant to Fed. R. Civ. P. 72(b), **WITHIN 14 DAYS** after being served with a copy of

the recommended disposition, a party may serve and file specific written objections to the

proposed findings and recommendations.  This period may be extended further by the Court on

timely motion for an extension.  Such objections shall specify the portions of the Report objected

to and shall be accompanied by a memorandum of law in support of the objections.  If the Report

and Recommendation is based in whole or in part upon matters occurring on the record at an oral

hearing, the objecting party shall promptly arrange for the transcription of the record, or such

portions of it as all parties may agree upon, or the Magistrate Judge deems sufficient, unless the

assigned District Judge otherwise directs.  A party may respond to another party's objections

**WITHIN 14 DAYS** after being served with a copy thereof.  Failure to make objections in

accordance with this procedure may forfeit rights on appeal.  *See Thomas* v. *Arn,* 474 U.S. 140

(1985); *United States* v. *Walters,* 638 F.2d 947 (6th Cir. 1981).